USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/04/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SOHC, INC.,

Plaintiff,

-v-

ZENTIS SWEET OVATIONS HOLDING LLC,

Defendant.

14-CV-2270 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

Plaintiff SOHC, Inc. ("SOHC") brings this suit against Defendant Zentis Sweet Ovations Holding LLC ("Zentis") to compel arbitration in front of an accounting firm. (Docket No. 2). The question presented is who should decide whether SOHC complied with the notice requirements for triggering such arbitration. In cross-motions, SOHC argues that the accounting firm should decide for itself, while Zentis argues that a different arbitrator should decide. For the reasons stated below, the Court agrees with SOHC. Accordingly, it grants SOHC's motion to compel arbitration, and denies Zentis's motion to dismiss. In addition, the Court grants SOHC's motion for leave to file certain exhibits in redacted form, and denies Zentis's request to strike allegations in the Complaint and several exhibits and to redact other exhibits.

**BACKGROUND**

The following facts are taken from the pleadings, as well as the declarations submitted in support of, and opposition to, the instant motions. *See, e.g.*, *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration . . . , the court applies a standard similar to that applicable for a motion for summary judgment."). The facts are

undisputed except where noted, and all inferences are drawn in Defendant's favor. *See, e.g.*, *Russell v. Mimeo, Inc.*, No. 08-CV-5354 (RJS), 2008 WL 6559743, at *1 (S.D.N.Y. Oct. 29, 2008) (noting that, where a motion to compel arbitration is opposed on the ground that the parties did not agree to arbitrate, "should give the opposing party the benefit of all reasonable doubts and inferences that may arise." (internal quotation marks omitted)).

On October 1, 2012, SOHC and Zentis entered into a purchase agreement (the "Agreement") governing the sale of SOHC's food processing business to Zentis. (Second Amended Complaint ("SAC") (Docket No. 19) ¶ 6). The Agreement provided that SOHC would receive an up-front payment, subject to two adjustments to be made at a later date — a "Working Capital Adjustment," based on the amount of working capital that SOHC had at the time of closing, and an "Earnout Amount," based on earnings before interest, taxes, depreciation, and amortization ("EBITDA"). (*Id.* ¶¶ 7-9, 26-34). Under the Agreement, Zentis was to provide SOHC "Reviewed Statements" within forty days describing what it believed to be the Working Capital as of the closing date. (*Id.* ¶ 11). SOHC then had thirty days to review the Statements and to object by "specifying in reasonable detail the names and extent of such disagreement (as well as the disputed items or amounts in the Reviewed Statements)." (*Id.* ¶ 12; Decl. Judith A. Archer Supp. Defs.' Mot. To Dismiss (Docket No. 25) ("Archer Decl."), Ex. A at 2). Similarly, Zentis was to provide SOHC with an Earnout Statement within ten business days following Zentis's receipt of its annual audit. (SAC ¶ 29; Archer Decl., Ex. A at 3). SOHC then had thirty days to object by "specifying in reasonable detail the basis for the objection." (SAC ¶ 30; Archer Decl., Ex. A at 3). If SOHC did not object, the Reviewed Statements with regard to Working Capital and the Earnout Statement became final. (Archer Decl., Ex. A at 3-4).

Complicating matters, the Agreement contains three separate arbitration clauses. With regard to the Reviewed Statements in connection with the Working Capital Adjustment, Section 2.6(c) of the Agreement (the "Working Capital Arbitration Clause") provides that "[a]ny disputed amounts or items which cannot be settled in accordance with" the process described above "shall be determined by the New York office of the Accounting Firm," which the agreement defines as Deloitte. (SAC ¶ 13; Archer Decl., Ex. A at 2). With regard to the Earnout Statements, Section 2.8(b) of the Agreement (the "Earnout Arbitration Clause" and, together with the "Working Capital Arbitration Clause," the "Accountant Arbitration Clauses") states that any dispute "may be submitted by either Party for resolution to the Accounting Firm." (SAC ¶ 31; Archer Decl., Ex. A at 3). Finally, the Agreement contains a third arbitration clause, Section 14.9(a) (the "ICC Arbitration Clause"), providing that "any dispute or controversy arising out of or in connection with this Agreement or the subject matter hereof . . . shall be settled by arbitration conducted in the Borough of Manhattan, New York, New York, pursuant to the arbitration rules of the International Chamber of Commerce." (Archer Decl., Ex. A at 5).

On January 8, 2013, Zentis's accounting firm sent SOHC its "Independent Accountants' Review Report," which stated that SOHC owed Zentis money with regard to the Working Capital Adjustment. (SAC ¶ 15). On February 20, 2013, Zentis sent SOHC its Earnout Statement. (*Id.* ¶ 35). SOHC objected to both. (*Id.* ¶¶ 16, 38; Archer Decl., Ex. B. at 1, Ex. C. at 1). In response, Zentis asserted that SOHC's notice of its objections was inadequate. (SAC ¶¶ 50-51). Thereafter, SOHC filed this lawsuit to compel arbitration. (Docket No. 2).

## DISCUSSION

### A. The Arbitrator Dispute

The parties' ultimate disagreement is whether their price dispute is subject to arbitration before Deloitte under the Accounting Arbitration Clauses.[1] Zentis argues that SOHC did not provide adequate notice of its objections and thus failed to satisfy a necessary precondition for arbitration under those clauses. (Def.'s Mem. Law Supp. Mot. To Dismiss (Docket No. 24) ("Def.'s Mem. Law") 19-21). SOHC contends that its notices were sufficient — or, more to the point, as sufficient as they could be given the information Zentis provided. (Mem. Law Pl. Opp'n Def.'s Mot. To Dismiss Supp. Pl.'s Cross-Mot. Order Compelling Arbitration (Docket No. 28) ("Pl.'s Mem. Law") 20-22). The precise question before the Court, however, is not whether SOHC satisfied the precondition, but rather the logically prior question of *who* should even decide that question. Zentis argues that whether SOHC provided adequate notice is a "question of arbitrability" and that, under the broad language of the ICC Arbitration Clause, it should be submitted to the ICC to decide. (Def.'s Mem. Law 11-16). By contrast, SOHC contends that the procedures set forth in the Accountant Arbitration Clauses encompass all disputes concerning the purchase price, including the parties' dispute over the sufficiency of

---

[1] Defendant also takes issue with Plaintiff's request that the arbitration take place before "a New York City partner of the accounting firm of Deloitte LLC" (Pl.'s Mem. Law 1; *see* SAC ¶ 78) on the ground that the Accountant Arbitration Clauses do not specify that arbitration shall occur before a single partner of Deloitte. (Def.'s Mem. Law Further Support Its Mot. To Dismiss Opp'n Pl's Mot. To Compel Arbitration & Opp'n Pl.'s Mot. To Redact & Seal (Docket No. 33) ("Def.'s Reply") 12-13). The exact manner in which Deloitte would conduct the arbitration, however, is not a question for the Court to address at this time. *See, e.g.*, *Bancol Y Cia. S. En. C. v. Bancolombia S.A.*, 123 F. Supp. 2d 771, 772 (S.D.N.Y. 2000).

SOHC's objections, and that the adequacy of the objections is thus a question for Deloitte, not for the ICC. (Pl.'s Mem. Law 11-16).[2]

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," *Bank Julius Baer & Co. v. Waxfield, Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005) (internal quotation marks omitted), as the Agreement here is.[3] The FAA expresses "a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), which requires courts to "construe arbitration clauses as broadly as possible," *S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984). In light of that policy, the role of a court is limited when there is an arbitration clause at issue. There is, however, an "exception" to this "long[-]recognized and enforced" policy favoring arbitration agreements: "The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2000) (internal citation, quotation marks and emphasis omitted).

---

[2] In the alternative, each party argues that the question is for the Court to decide and, naturally, that the Court should decide the question in its favor. (Def.'s Mem. Law 19-21; Pl.'s Mem. Law 20-22).

[3] Because the Agreement directs courts to apply New York law (SAC ¶ 7), Zentis relies on cases applying New York law. (Def.'s Reply 5-8 (citing *In re Cnty. of Rockland*, 51 N.Y.2d 1, 8- 9 (1980), and *Ballard v. Parkstone Energy LLC*, 522 F. Supp. 2d 695, 696 (S.D.N.Y. 2007), among others)). "For cases that fall within its reach," however, "the FAA governs all aspects of arbitration procedure and pre-empts inconsistent state law" — even when a contract includes a general New York choice-of-law provision. *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F. Supp. 826, 830 (S.D.N.Y. 1996); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock*, 822 F. Supp. 125, 131 (S.D.N.Y. 1993) ("It is well-settled that the [FAA] applies where federal subject matter jurisdiction is predicated upon diversity and where the contract calling for arbitration concerns a transaction involving interstate commerce.") (internal citation omitted).

Significantly, however, "the phrase 'question of arbitrability'" has a "limited scope" and does not apply to every "gateway question," even if "potentially dispositive." *Id.* Indeed, the phrase applies only in "narrow circumstance[s]," such as when the dispute concerns "whether the parties are bound by a given arbitration clause" or whether "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.* at 83-84. By contrast, "'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* at 84 (emphasis in original) (internal quotation marks omitted); *see also id.* at 85 ("'[I]n the absence of an agreement to the contrary, . . . issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.'") (quoting the Revised Uniform Arbitration Act of 2000, § 6, cmt. 2, 7 U.L.A. at 13) (emphasis omitted)); *UBS Fin. Servs., Inc. v. West Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 655 (2d Cir. 2011) (holding that disputes over the interpretation of forum selection clauses in arbitration agreements are "presumptively arbitrable procedural questions").

The question at issue here — whether SOHC satisfied a necessary precondition for arbitration before Deloitte by providing adequate notice of its objections — falls on the procedural side of this divide. As the Seventh Circuit held in *Lumbermens Mutual Casualty Co. v. Broadspire Management Services Inc.*, 623 F.3d 476 (7th Cir. 2010), a case involving the very same issue (yet not cited by either party here), the parties' conflict "grow[s] out of the dispute between the parties [over the purchase price] and bear[s] directly on the arbitrator's final disposition of what the purchase price should be." *Id.* at 481. Moreover, "there is no dispute as to the existence of an agreement to arbitrate itself," or whether that agreement extends to the

parties' dispute over purchase price. *Id.* at 483. "Instead, this is a procedural dispute over preconditions *to* that arbitration." *Id.* at 483 (emphasis in original); *see also JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 392-93 (6th Cir. 2008) (holding that the question of whether a party had properly documented its calculation of EBITDA, which was a condition precedent to arbitration before an accountant, was "exactly the type of 'condition [ ] precedent to an obligation to arbitrate' that *Howsam* presumptively allocated to the arbitrator. It is a 'procedural question[ ] . . . grow[ing] out of the dispute [that] bear[s] on its final disposition,'" and thus a question for the arbitrator (quoting *Howsam*, 537 U.S. at 84-85) (citation omitted))). The question of whether SOHC triggered the Accountant Arbitration Clauses is thus for the arbitrator to decide.

The next question, however, is *which* arbitrator: the ICC (as Zentis contends) or Deloitte (as SOHC contends)? When an agreement, such as the one at issue here, "includes two dispute resolution provisions, one specific (a valuation provision) and one general (a broad arbitration clause), the specific provision will govern those claims that fall within it." *Katz v. Feinberg*, 290 F.3d 95, 97 (2d Cir. 2002). Zentis concedes as much, but argues that the question of whether SOHC's notice was adequate does not fall within the Accountant Arbitration Clauses. (Def.'s Reply 11-12). To determine whether that is the case, the Court must conduct a three-part inquiry. *See, e.g.*, *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001). First, the Court must determine whether the clause is broad or narrow. *See id.* Second, if reviewing a narrow clause, it must determine whether the dispute "is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Id.* (internal quotation marks omitted). And third, for narrow arbitration clauses, the Court should generally find a

collateral issue to fall outside of the clause, while for broad clauses there is a presumption of arbitrability. *See id.*

At the first step, there are no "fixed rules" governing the determination of whether an arbitration clause is broad or narrow. *Id.* at 225. Instead, the Court "must determine whether, on the one hand, the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute." *Id.* Meanwhile, at the second step — determining whether a narrow arbitration clause covers a particular agreement — a court looks to "the factual allegations in the complaint rather than the legal causes of action asserted." *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999); *see S. New England Tel. Co. v. Global Naps, Inc.*, No. 04-CV-2075 (JCH), 2006 WL 1169805, at * 7 (D. Conn. Apr. 28, 2006) (applying *Smith/Enron* in the context of a narrow arbitration clause). An issue is collateral — and therefore not covered by a narrow arbitration clause — only if it is "a separate, side agreement, connected with the principal contract which contains the arbitration clause." *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983). If, however, a dispute "arises under the main agreement but requires determination of a sub-issue," it is "inextricably tied up with the merits of the underlying dispute," and therefore arbitrable even under a narrow clause. *Id.*

Here, the Accountant Arbitration Clauses are narrow. Rather than applying generally to disputes "arising out of" or "in connection with" the Agreement, they apply only to "disputed amounts or items" with regard to the Reviewed Statements and "objections that remain in dispute with respect to the Earnout Statement." (Archer Decl., Ex. A at 2-3). Nevertheless, the

disagreement over the adequacy of SOHC's notice falls within their scope. Zentis argues that SOHC's notice was not "reasonably detail[ed]," as required by the arbitration agreement. (Defs.' Mem. Law 19). SOHC responds that it could not have provided more detail because it did not have access to necessary financial information. (Pl.'s Mem. Law 20-22). Resolving that dispute requires grappling with the same materials and many of the same issues that Deloitte would have to grapple with in resolving the parties' underlying price dispute. To the extent that it involves close examination of the financial documents, it is also a specialized task for which an accountant such as Deloitte is better suited than a general arbitrator such as the ICC. In short, resolving the parties' disagreement about the adequacy of SOHC's notice is "inextricably tied up with the merits of the underlying [price] dispute." *Prudential Lines, Inc.*, 704 F.2d at 64; *see also, e.g., John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964) ("It would be a curious rule which required that intertwined issues . . . growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums . . . . Neither logic nor considerations of policy compel such a result.").

Once again, the Seventh Circuit's decision in *Lumbermens* is directly on point. There, as here, the agreement contained both a broad general arbitration clause and a separate set of procedures pursuant to which purchase price disputes would be submitted to an accounting or appraisal firm. *See* 623 F.3d at 477-78. There, as here, the Court was called upon to decide whether a dispute over the adequacy of the plaintiff's objections to the defendant's purchase price calculations was an issue for the accounting arbitrator to decide. *See id.* at 481-82.[4] The

[4] In *Lumbermens*, the defendant argued before the district court — as Zentis does here — that the adequacy of the plaintiff's objection notices should be settled by the arbitrator named in the broad general arbitration clause. *See id.* at 481 n.4. After the district court held that that question should be answered by the accounting arbitrator under the purchase price dispute resolution procedure, the defendant changed its tune and argued that the question was one of

Court held that it was. In determining whether the plaintiff's objection notice "contains sufficient detail," the Court reasoned, "the [accounting] arbitrator will be examining the same documents and assessing the same issues relevant to the actual substantive resolution of the parties' price dispute. It would be strange to divide these largely overlapping tasks between [different decisionmakers]." *Id.* at 481. It would be particularly strange, the Court continued, given the "particular expertise" of the accounting arbitrator. *Id.* (citing *Howsam*, 537 U.S. at 85, for the proposition that the law assumes "expectation that aligns (1) decisionmaker with (2) comparative expertise"); *see also JPD, Inc.*, 539 F.3d at 393 (recognizing that an accounting firm "undoubtedly possesses greater expertise in determining how much disclosure an EBITDA audit requires"). In evaluating whether the plaintiff's objection notices were adequate, the Court concluded, the accounting arbitrator "will necessarily be engaging in a fact-intensive, specialized inquiry very similar to the inquiry it would undertake in order to actually determine what the proper purchase price should be." *Lumbermens*, 623 F.3d at 481; *see also id.* at 482 (stating that evaluating the plaintiff's objection notices "is inextricably related to the core function that the arbitrator performs under the Agreement — reaching a conclusion as to 'all disputed amounts' at issue").

Just as the adequacy of the plaintiff's objection notices was a procedural condition precedent allocated to the accounting arbitrator in *Lumbermens*, the adequacy of SOHC's objection notices here is a procedural condition precedent to arbitration under the Accounting Arbitration Clauses allocated to Deloitte. In light of that legal conclusion, and the absence of any genuine dispute as to any material fact, the Court is compelled to grant SOHC's motion to

---

arbitrability for the district court to decide. *See id.* at 481 & n.4. Thus, the Seventh Circuit was confronted with the question whether the court or the accounting firm should review the adequacy of the plaintiff's notices. That distinction is immaterial for purposes of this case.

compel arbitration before Deloitte and to deny Zentis's cross-motion to dismiss. *See, e.g.*, *Bensadoun*, 316 F.3d at 175 ("In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . the court applies a standard similar to that applicable for a motion for summary judgment." (internal citation omitted)).

**B. The Parties' Requests To Seal, Strike, and Redact**

The Court turns, then, to Plaintiff's motion for leave to file certain exhibits in redacted form and Defendant's requests to redact other exhibits and to strike certain allegations from the Complaint and certain exhibits. In the former, Plaintiff seeks to redact certain customer and financial information from the exhibits accompanying its cross-motion to compel arbitration. (Mem. Law Supp. Pl.'s Mot. Leave To Redact Exhibits & File Unredacted Exhibits Under Seal (Docket No. 30, Ex. 3) ("Pl.'s Sealing Request") 2-3). Although the relevant documents are — as Plaintiff concedes (*see id.* at 2) — "judicial documents" subject to a common law and First Amendment presumption in favor of public access, *see, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006), the Court finds that SOHC has shown a sufficient basis to justify its proposed redactions. The proposed redactions are limited to specific "financial figures and customer information" (Pl.'s Sealing Request 2), which are not relevant to the parties' legal dispute and implicate legitimate privacy interests. *Cf. United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("Financial records of a wholly owned business . . . and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public."). Consequently, the Court concludes that the presumption of access is overcome, and Plaintiff's motion is thus GRANTED.

By contrast, Defendant's requests to make further redactions to Plaintiff's exhibits, strike several of the exhibits as settlement negotiations, and strike several paragraphs of the Complaint

are denied. (Def.'s Reply 22-29). With respect to the first request, Plaintiff's exhibits have been publicly filed without Defendant's desired redactions for months, and Defendant did not take any immediate steps to cure the disclosure. (Decl. Joseph J. Fleischman Opp'n Def.'s Mot. To Dismiss & Support Pl,'s Cross-Mot. Order Compelling Arbitration (Docket No. 29)). Defendant included its request to seal in its reply memorandum, and it did nothing in particular to draw the Court's attention to the fact that it believed its confidential information was being made public. (*See* Def.'s Reply 1 (referring to Defendant's reply brief only as a "Memorandum of Law in Further Support of Defendant's Motion to Dismiss, in Opposition to Plaintiff's Motion to Compel Arbitration, and in Opposition to Plaintiff's Request to Redact and Seal")). As the proverbial cat is out of the bag, Defendant's request for redaction is thus DENIED as moot. *See, e.g.*, *King Pharm., Inc. v. Eon Labs, Inc.*, No. 04-CV-5540 (DGT), 2010 WL 3924689, at *10 (E.D.N.Y. Sept. 18, 2010) (denying redaction request for information that was "already public.").[5] Defendant's requests to strike portions of the Complaint and certain exhibits is also denied as moot because the Court did not rely on the exhibits or the portions of the Complaint that Defendant challenges.

**CONCLUSION**

For the reasons stated above, SOHC's motion to compel arbitration under the Accounting Arbitration Clauses is GRANTED, and Zentis's motion to dismiss is DENIED. Further, SOHC's motion for leave to file several exhibits in redacted form is GRANTED, and Zentis's requests to redact other exhibits and strike portions of the Complaint and certain exhibits are DENIED.

---

5 Defendant had the opportunity to work with Plaintiff to better protect the information it considers to be confidential. Plaintiff asked Defendant whether there was any additional confidential information in the exhibits that should be redacted. The only specific request that Defendant made, however, was that the purchase price be redacted. (Decl. Melissa A. Pena Support Pl.'s Mot. Leave To Redact Exhibits & File Unredacted Exhibits Under Seal (Docket No. 30, Ex. 1), Ex. G).

The Clerk of Court is directed to terminate Docket Nos. 23, 27, and 30. Further, as there is no reason to keep the case open pending the arbitration, the Clerk of Court is directed to administratively close the case without prejudice to either party moving by letter motion to reopen the case within thirty days of the conclusion of the arbitration proceedings.

SO ORDERED.

Date: November 4, 2014
New York, New York

JESSE M. FURMAN
United States District Judge